No. 24-60570

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

ELECTRONIC SECURITY ASSOCIATION, INTERACTIVE
ADVERTISING BUREAU, AND NCTA—THE INTERNET AND
TELEVISION ASSOCIATION,
*Petitioners*,

_____

# ON PETITION FOR WRIT OF MANDAMUS TO THE FEDERAL
# TRADE COMMISSION

_____

ANISHA S. DASGUPTA
*General Counsel*

MATTHEW M. HOFFMAN
BENJAMIN F. AIKEN
MATTHEW WEPRIN
*Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
mhoffman@ftc.gov
(202) 326-3097

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 4

BACKGROUND ................................................................. 7

    A.   The Lottery Statute for Judicial Review ..................................... 7

    B.   Announcement of the Negative Option Rule ............................. 9

    C.   The Petitions for Review ........................................................ 11

LEGAL STANDARD ......................................................... 13

ARGUMENT ..................................................................... 14

I.   This Court Should Dismiss For Lack Of Jurisdiction ...................... 14

II.  The Court Should Not Issue A Writ of Mandamus
Because It Is Not Clear and Indisputable That The Rule
Has Issued For Purposes of § 2112. .................................... 16

    A.   The Best Reading of "Issuance" As Used in § 2112
Refers to Publication in the Federal Register .......................... 17

    B.   Petitioners Have Not Cited Any Persuasive
Authority To Suggest That a Rule Is "Issued" When
Its Proposed Text Is Released and Transmitted to
OFR. ................................................................... 24

III. Mandamus Should Also Be Denied Because Petitioners
Have an Alternative Remedy Before the JPML. ........................... 28

IV. Petitioner's Remaining Arguments Do Not Demonstrate
That Mandamus Is Appropriate ........................................ 30

# TABLE OF AUTHORITIES

**CASES**

*Arlington Oil Mills, Inc. v. Knebel,*
543 F.2d 1092 (5th Cir. 1976) ..............................................................25

*Cheney v. U.S. Dist. Ct. for D.C.,*
542 U.S. 367 (2004) .............................................................. 13, 17, 30

*Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros,*
53 F.3d 1565 (11th Cir. 1995) ..............................................................18

*GPA Midstream Ass'n v. United States Dep't of Transportation,*
67 F.4th 1188 (D.C. Cir. 2023) ..............................................................19

*Horsehead Resource Dev. Co. v. EPA,*
130 F.3d 1090 (D.C. Cir 1997) ..............................................................18

*Humane Society of the United States v. Dep't of Agriculture,*
41 F.4th 564 (D.C. Cir. 2022) ..........................................................19, 26

*In re FERC,*
MCP No. 175, 2024 WL 1596933 (Apr. 11, 2024) ....................26, 27, 28

*In re La. Pub. Serv. Comm'n,*
58 F.4th 191 (5th Cir. 2023) ..............................................................15

*In re MCP NO. 165,*
21 F.4th 357 (6th Cir. 2021) ..............................................................9

*In re National Nurses United,*
47 F.4th 746 (D.C. Cir. 2022) ..............................................................14

*NetCoalition v. SEC,*
715 F.3d 342 (D.C. Cir. 2013) ..............................................................16

*New York Stock Exch. LLC v. SEC,*
2 F.4th 989 (D.C. Cir. 2021) ..............................................................18

*NRDC v. Nat'l Highway Traffic Safety Admin.,*
894 F.3d 95 (2d Cir. 2018) ..........................................................18, 19

*Saturn Airways, Inc. v. Civil Aeronautics Board,*
476 F.2d 907 (D.C. Cir. 1973) ..............................................................25

*Southland Mower Co., v. U.S. Consumer Prod.*
   *Safety Comm'n,*
   600 F.2d 12 (5th Cir. 1979) ................................... 7

*Texas v. United States,*
   891 F.3d 553 (5th Cir. 2018) ............................... 16

*Turtle Island Restoration Network v. Dep't of*
   *Commerce,*
   438 F.3d 937 (9th Cir. 2006) ............................... 18

## STATUTES

15 U.S.C. § 77i ...................................................... 22

28 U.S.C. § 1651 .................................................... 14

28 U.S.C. § 2112 .............................................. passim

44 U.S.C. § 1501 .................................................... 26

44 U.S.C. § 1503 .................................................... 10

44 U.S.C. § 1507 ............................................... 10, 11

## OTHER AUTHORITIES

Wright & Miller, 33 Fed. Prac. & Proc. Judicial
   Review § 8373 (2d ed.) ...................................... 7

## RULES

Fed. R. App. P. 18 ...................................... 14, 30, 33

## REGULATIONS

1 C.F.R. § 17.1 ...................................................... 10

1 C.F.R. § 17.2 ...................................................... 10

1 C.F.R. § 18.13 ............................................... 10, 19

16 C.F.R. § 1.14 ...................................................... 9

16 C.F.R. § 4.4 ...................................................... 15

17 C.F.R. § 201.140 ............................................... 22

# INTRODUCTION

Petitioners seek a writ of mandamus to compel the Federal Trade Commission to take action that would be contrary to law and potentially prejudicial to third parties. The dispute concerns the proper interpretation of 28 U.S.C. § 2112, which provides that when petitions for review of an agency rule are filed in multiple circuits, the agency must notify the Judicial Panel on Multidistrict Litigation (JPML) of any petitions served on the agency within 10 days after the rule's "issuance." The JPML will randomly select one circuit from among those in which petitions were properly filed and consolidate all the petitions before that circuit. This lottery system, adopted by Congress in 1988, is designed to provide a fair process for litigants and avoid an unseemly race to the courthouse.

Under well-settled principles of administrative law, a rule issues when it is published in the Federal Register. Petitioners here misread the statute as requiring the FTC to notify the JPML before the rule is even published, based on the agency's announcement of the proposed text of the rule. That would shut other potential challenges out of the lottery process and recreate the very race to the courthouse that

Congress sought to avoid. It also would be inconsistent with the weight of historical practice across myriad agencies and presidential administrations since the inception of the modern multicircuit lottery.

In this case, the FTC announced that it had approved amendments to its Negative Option Rule and at that time it released the proposed text that it had transmitted to the Office of the Federal Register ("OFR"). Rather than waiting for publication, four groups of challengers filed petitions for review and demanded that the FTC notify the JPML of the petitions immediately. The FTC explained that it would notify the JPML ten days after Federal Register publication, in accordance with § 2112. Petitioners then filed this mandamus petition, wrongly stating that the agency was refusing to notify the JPML.

The petition for mandamus must be denied. For starters, this Court lacks the authority under the All Writs Act to order the requested relief because Petitioners are not seeking to preserve this Court's jurisdiction. To the contrary, they are asking for relief that could potentially *oust* this Court's jurisdiction, and would intrude on the jurisdiction of the JPML to decide when a rule issues for purposes of § 2112. Nor does the APA vest this Court with jurisdiction. Absent

some other statutory provision conferring jurisdiction on this Court, an APA action—or an action for mandamus, like Petitioners are seeking—must begin in district court.

In any event, Petitioners do not have a clear and indisputable right to relief. Petitioners' assertion that a rule can issue for purposes of § 2112 before it is published in the Federal Register is contrary to precedent, historical practice, and common sense. None of the authorities Petitioners cite support their position.

Petitioners also have not shown any harm that will result from a brief delay in notification to the JPML. After the Commission submits all timely filed petitions following publication in the Federal Register, Petitioners are free to ask the JPML to omit from the lottery any petitions they believe were filed too late. And the lottery does not affect Petitioners' ability to seek a stay in court.

Finally, Petitioners request for an administrative stay should be denied. The Rule will not have any legal effect until it is published in the Federal Register, and even then none of its provisions will come into effect for at least 60 days.

# BACKGROUND

## A. The Lottery Statute for Judicial Review

Before 1988, if petitions for review of the same agency action were filed in multiple circuits, they would be consolidated and transferred to the court in which the first case was timely filed. *See e.g., Southland Mower Co., v. U.S. Consumer Prod. Safety Comm'n*, 600 F.2d 12, 13-14 (5th Cir. 1979) (looking to first petition filed following promulgation of agency rule, while rejecting premature petition filed before promulgation). That rule incentivized a costly and inefficient "race to the courthouse." Selection of Courts of Appeals to Decide Multiple Appeals, Hearing on H.R. 3084 Before the Subcomm. On Administrative Law and Governmental Relations of the H. Comm. On the Judiciary, 98th Cong. 1-2 (1983). In the 1980s, Congress sought to create a fairer system that provided a reasonable window for multiple challengers to file their petitions in their preferred venue, after which one venue would be randomly chosen. *Id.*; *see also* Wright & Miller, 33 Fed. Prac. & Proc. Judicial Review § 8373 (2d ed.) (noting that Congress amended § 2112 "[t]o alleviate the race-to-the-courthouse problem").

The current system is governed by 28 U.S.C. § 2112, which now provides that if an agency receives "within ten days after issuance of

the order … from the persons instituting the proceedings, the petition for review with respect to proceedings in at least two courts of appeals," the agency "shall, promptly after the expiration of the ten-day period specified in that sentence, so notify the judicial panel on multidistrict litigation … in such form as that panel shall prescribe." 28 U.S.C. § 2112(a)(1), (a)(3). The JPML then selects one court of appeals at random from those where petitions were filed and served on the agency within that 10-day period and consolidates the petitions in that venue. 28 U.S.C. § 2112(a)(3). As of September 19, 2024, there have been 191 multicircuit lotteries conducted under this regime. *See* Multi Circuit Petition Report, https://tinyurl.com/2azbysmj.

The possibility of a lottery does not divest jurisdiction from the courts in which petitions have been filed. Until the lottery is run, each case remains in the court where it was filed. This means, among other things, that "[a]ny court of appeals in which proceedings with respect to an order of an agency … have been instituted may …stay the effective date of the order." 28 U.S.C. § 2112(a)(4). After the cases are consolidated in a single court after the lottery, the transferee court can "modif[y], revoke[], or extend[]" any pre-existing stay. *Id*; *cf. In re MCP*

*NO. 165*, 21 F.4th 357, 366 (6th Cir. 2021) (explaining how this Court stayed an OSHA order, after which the Sixth Circuit dissolved the stay following the lottery).

## B.    Announcement of the Negative Option Rule

This petition concerns the FTC's amended Negative Option Rule, which will be promulgated under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a. The FTC rules of practice for Section 18(a)(1)(B) rulemakings provide that a "final rule will be published in the Federal Register." 16 C.F.R. § 1.14.

On October 16, 2024, the FTC issued a press release announcing that the Commission had voted to "approv[e] publication of the final rule in the FEDERAL REGISTER." Federal Trade Commission, *Federal Trade Commission Announces Final "Click-to-Cancel" Rule*, https://tinyurl.com/mr47yavb. The press release noted that "[m]ost of the final rule's provisions will go into effect 180 days after it is published in the Federal Register." The press release provided a link to a page that included a PDF titled "Proposed text of Federal Register publication," which contained the text that the FTC was submitting to the Office of the Federal Register ("OFR") for its review and processing.

9

https://www.ftc.gov/legal-library/browse/federal-register-notices/negative-option-rule-final-rule. The first page of this PDF document has a placeholder which states: "The amendments are effective [INSERT DATE 60 DAYS AFTER DATE OF PUBLICATION IN FEDERAL REGISTER], except that §§ 425.4 through 425.6 are effective [INSERT DATE 180 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER]." Federal Trade Commission, *Proposed text of Federal Register publication*, https://tinyurl.com/29eamzmn at 1.

OFR's regulations provide that when a rule is received from an agency, it will be held for confidential processing until it is filed for public inspection. 1 C.F.R. § 17.1. During this period, the rule is still subject to revision and can be withdrawn or amended by the agency without notice and comment. 1 C.F.R. § 18.13. Once processing is complete, OFR makes the rule available for public inspection by posting it on the OFR website, and then (usually but not always the following day) OFR publishes the rule in the Federal Register. 44 U.S.C. § § 1503, 1507; 1 C.F.R. § 17.2. "[P]ublication in the Federal Register of a

document creates a rebuttable presumption … that [the document] was duly issued, prescribed, or promulgated." 44 U.S.C. § 1507(1).

The Negative Option Rule is still being processed by OFR. The final text has not been made available for public inspection or published in the Federal Register.

## C. The Petitions for Review

Anyone seeking to challenge the FTC's issuance of a Section 18(a)(1)(B) rule may file a petition for review no later than 60 days after the rule is promulgated. Although the Negative Option Rule has not yet been published, four groups of challengers filed petitions for review on October 22. The petitions were filed in the Fifth, Sixth, Eighth, and Eleventh Circuits.[1] Petitioners served copies of the petitions on the Secretary of the FTC on October 25. They also formally requested that the Commission stay the Rule under 5 U.S.C. 705 pending judicial

---

[1] *See Electronic Sec. Ass'n, Interactive Advertising Bureau, and NCTA-The Internet & Television Ass'n v. FTC*, No. 24-60542, (5th Cir. 2024); *Michigan Press Ass'n and National Federation of Independent Business, Inc., v. FTC*, No. 24-3912, (6th Cir. 2024); *Custom Commc'ns, Inc. d/b/a Custom Alarm v. FTC*, No. 24-3137, (8th Cir. 2024); *The Chamber of Commerce of the United States of America and the Georgia Chamber v. FTC*, No. 24-13436, (11th Cir. 2024).

review. *See Joint Petition for Stay* (Oct. 25, 2024),

https://tinyurl.com/2scwwf4p.

The FTC promptly advised counsel for Petitioners that the Commission could not notify the JPML of the petitions at that time because the ten-day period described in 28 U.S.C. § 2112(a)(1) will not begin until the rule formally issues—i.e., when it is published in the Federal Register. App. 274-276. The FTC explained that additional parties could still timely challenge the Rule within the statutory 10-day period, and that any such parties would have the right to be included in the § 2112 lottery. The FTC stated that, as required by § 2112(a)(3), it would notify the JPML of the petitions (and any others that may be received) once the Rule is published in the Federal Register and the ten-day period has expired. App. 274-276. Petitioners asked the FTC to reconsider its position. App. 277-280. In response, the FTC explained that Petitioners' cited authorities were inapposite and did not establish that the FTC must submit the petitions to the JPML before the Rule's publication in the Federal Register. App. 281-285.  Meanwhile, the

Commission is continuing to consider Petitioners' request for a stay of the Rule, even though the Rule has not yet been published.[2]

## LEGAL STANDARD

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up). To establish a right to mandamus, a petitioner (1) "must have no other adequate means to attain the relief he desires"; "must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable"; and (3) must satisfy "the issuing court, in the exercise of its discretion … that the writ is appropriate under the circumstances." *Id.* at 380-81 (cleaned up).

---

[2] The stay request must be considered and voted on by all five Commissioners. While the Commission has not yet issued a decision on Petitioners' stay request, it has issued stays pending judicial review in the past. For example, the Commission stayed the Combatting Auto Retail Scams (CARS) Rule pending this Court's review earlier this year. *See Order Postponing Effective Date of Final Rule Pending Judicial Review* (Jan. 18, 2024), https://tinyurl.com/3v8jp65x.

## ARGUMENT

## I. THIS COURT SHOULD DISMISS FOR LACK OF JURISDICTION

Petitioners are incorrect (*see* Mot. 13) that the All Writs Act, 28 U.S.C. § 1651, and the APA provide this Court with jurisdiction here. Neither offers a source of jurisdiction.

The All Writs Act "does not expand the jurisdiction of a court." *In re National Nurses United*, 47 F.4th 746, 755 (D.C. Cir. 2022) (internal quotation marks omitted). The Act merely permits courts to resort to mandamus "in aid of their [] jurisdiction[]." 28 U.S.C. § 1651(a). Here, however, petitioners are asking the Court to take a step—ordering the petitions sent to the JPML—that may *oust* the Court of jurisdiction.

To the extent Petitioners are relying on their right to seek a stay, their requested mandamus relief would have no effect on that right. As explained above (at 8), the multicircuit lottery statute already allows "[a]ny court of appeals in which proceedings with respect to an order of an agency … have been instituted" to "stay the effective date of the order." 28 U.S.C. § 2112(a)(4). Thus, once the Commission has rendered a decision on Petitioners' pending request for a stay, *see* Fed. R. App. P. 18(a)(1), Petitioners can seek a stay in this Court regardless of whether

transmission to the JPML has occurred. The requested mandamus is thus not in aid of this Court's jurisdiction.[3]

Petitioners' reliance on *In re La. Pub. Serv. Comm'n*, 58 F.4th 191, 192 (5th Cir. 2023) is misplaced. That case involved a petition for a writ of mandamus to compel the Federal Energy Regulatory Commission to resolve a ratemaking dispute which, following the agency's ruling, would have been subject to review in this Court. By contrast, in this case, this Court does not have authority over the § 2112 process—Congress has given that authority to the JPML—and the requested relief is not necessary to protect this Court's jurisdiction over the pending petition for review.

As for the APA, that statute likewise "is not a jurisdiction-conferring statute"; it instead merely "provides the standard of review for agency orders." *NetCoalition v. SEC*, 715 F.3d 342, 347 (D.C. Cir.

---

[3] Petitioners also failed to properly serve the Commission with the petition for mandamus. The FTC's rules of practice allow service of "[d]ocuments served upon the Commission" by either "personal delivery … or by first-class mail to the Office of the Secretary of the Commission." 16 C.F.R. § 4.4(f). Petitioners here emailed copies of the petition to counsel for the Commission without ever serving the Commission itself. That does not comply with the Commission's rules or with Federal Rule of Appellate Procedure 25.

2013). Absent a statutory provision that "expressly supplie[s] the court of appeals with jurisdiction to review agency action directly, an APA challenge falls within the general federal question jurisdiction of the district court and must be brought there ab initio." *Id.*

Petitioners identify no statute that provides for direct review in this Court of an agency's decision not to submit petitions for review to the JPML, and the FTC is aware of none. To the extent this is an APA action, it belongs in district court. Similarly, under 28 U.S.C. § 1361, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See, e.g.*, *Texas v. United States*, 891 F.3d 553, 558 (5th Cir. 2018) ("In the ordinary course, civil actions—including petitions for mandamus…—must first be filed in federal district court, our court of first instance."). This petition should be dismissed.

## II.   THE COURT SHOULD NOT ISSUE A WRIT OF MANDAMUS BECAUSE IT IS NOT CLEAR AND INDISPUTABLE THAT THE RULE HAS ISSUED FOR PURPOSES OF § 2112.

If this Court has jurisdiction, it should deny Petitioners' request for a writ of mandamus because they do not have a "clear and

indisputable" right to the relief they are seeking. *Cheney*, 542 U.S. at 381. Petitioners argue that the Rule "issued" for purposes of § 2112 on October 16, when the Commission announced the results of its vote and released the proposed text it was transmitting to OFR. That argument is contrary to well-established principles of administrative law, which recognize that a rule does not become final until OFR makes it available for public inspection and publishes it in the Federal Register. The argument is also contrary to longstanding practice: Agencies regularly transmit petitions for review of rules to the JPML only after the rules are published in the Federal Register. Finally, adopting petitioners' position would also be prejudicial to the rights of other parties who might seek to challenge the rule shortly after receiving notice of it through Federal Register publication, because they would be shut out of the lottery if the FTC were to transmit the petitions to the JPML now.

### A. The Best Reading of "Issuance" As Used in § 2112 Refers to Publication in the Federal Register

It is a "basic tenet of administrative law, set out by the APA, that a substantive regulation does not have legal effect—that is, it has not been established authoritatively—until it has been published in the Federal Register." *NRDC v. Nat'l Highway Traffic Safety Admin.*, 894

17

F.3d 95, 106 (2d Cir. 2018). Publication in the Federal Register is what puts the public on notice of a new rule and finalizes the text and substance of a rule.

Numerous decisions recognize that that "[a]n agency rule is considered promulgated on the date it is published in the Federal Register." *New York Stock Exch. LLC v. SEC*, 2 F.4th 989, 992 n.1 (D.C. Cir. 2021); *Turtle Island Restoration Network v. Dep't of Commerce*, 438 F.3d 937, 943-44 (9th Cir. 2006) (regulations are "promulgated" when published in the Federal Register); *Horsehead Resource Dev. Co. v. EPA*, 130 F.3d 1090, 1093 (D.C. Cir 1997) (ordinary meaning of "promulgation" is publication in the Federal Register).

Further, a rule "issues" for purposes of a judicial review statute when the rule is published in the Federal Register. *See Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1573-74 (11th Cir. 1995). As the court recognized there, this conclusion is consistent with the plain meaning of the word "issue." *Black's Law Dictionary* defines "issue" as "to send out or distribute *officially*." (emphasis added); *see* Mot. 15-16 (citing this definition). The official distribution of a rule occurs when its final text is published in the Federal Register; that is

what establishes the rule "authoritatively" and gives it "legal effect."

*NRDC*, 894 F.3d at 106.

Before Federal Register publication, a rule has no effective date

and cannot be enforced. Here, for example, the "[p]roposed text" that

the FTC released includes bracketed placeholders pegging the effective

date of the Rule to the date of publication.[4]  Moreover, an agency may

withdraw a rule at least until the date when OFR makes the final text

of the rule available for public inspection—typically, one business day

before publication. *GPA Midstream Ass'n v. United States Dep't of*

*Transportation*, 67 F.4th 1188, 1195 (D.C. Cir. 2023); *see also Humane*

*Society of the United States v. Dep't of Agriculture*, 41 F.4th 564, 568

(D.C. Cir. 2022); 1 C.F.R. § 18.13. That is because, before that time, the

rule is "'not valid' and enforceable against the public at large." *GPA*

*Midstream Ass'n*, 67 F.4th at 1195.

Other language in § 2112 reinforces the conclusion that

"issuance," with respect to a rule, occurs upon publication. The statute

directs the agency to "file the record" with the court designated by the

---

    [4] Federal Trade Commission, *Proposed text of Federal Register*
*publication*, https://tinyurl.com/29eamzmn at 1.

JPML for consolidation of the petitions. 28 U.S.C. § 2112(a)(1). The agency cannot "file the record" of a rule until after it is published in the Federal Register because the rule as published in the Federal Register is a critical part of the record. The statute thus is most sensibly read as requiring notice to the JPML after the rule is published and the administrative record is complete.

Petitioners' position is also inconsistent with the history of § 2112 and the practice of agencies across administrations since the 1988 amendment creating the multicircuit lottery. Agencies regularly provide notice to the JPML after rules are published in the Federal Register. For instance, when the FCC released the "Restoring Internet Freedom Order" eliminating so-called "net neutrality," it followed the same process the FTC is following here. The FCC publicly announced its vote in a press release on its website on December 14, 2017.[5] It "released" the rule and accompanying order on January 4, 2018.[6] The order was

---

[5] *See* FCC Acts to Restore Internet Freedom, https://tinyurl.com/ka3st93h (Dec. 14, 2014).

[6] *See In The Matter Of Restoring Internet Freedom, Declaratory Ruling, Report and Order, and Order*, FCC 17-166 (Jan. 4, 2018), https://tinyurl.com/rccyauvp.

then published in the Federal Register on February 22, 2018. *See* 83

Fed. Reg. 7852. And on March 7, 2018, the FCC transmitted the 12

petitions it received to the JPML. *See* MCP No. 150

https://tinyurl.com/yyftumy5 at page 130.

That is just one illustrative example, and it represents the

standard course that agencies have long adopted. In the most recent

multicircuit lottery, which concerned the FCC's implementation of the

Martha Wright-Reed Act, the FCC transmitted the petitions for review

to the JPML after publication in the Federal Register on August 26,

2024, even though the order was "released" on July 22, 2024. *See* MCP

No. 191, https://tinyurl.com/59d8h5jm. Petitioners cite this very

example as one where "agencies routinely send petitions to the JPML

even when there are disputes over the timing of the petitions,"[7] Mot. 7,

but ignore that the agency in this case waited for publication in the

Federal Register.

---

[7] The "dispute[] over timing" in MCP No. 191 concerned the treatment
of two petitions that were not served in ECF-stamped form within
Section 2112's 10-day window due to delays by the Court of Appeals in
processing those petitions. Notice of Multicircuit Petitions for Review 1–
3, *In re FCC*, MCP No. 191 (J.P.M.L. Sept. 16, 2024).

Indeed, the practice of waiting for Federal Register publication dates back to the earliest days of the multicircuit lottery. In 1989, OSHA transmitted to the JPML petitions received within 10 days after the challenged agency rule was published in the Federal Register. *See* MCP No. 5. https://tinyurl.com/yyftumy5 at pages 3-4. The FCC did the same in 1991, *see* MCP No. 13; OSHA did it again in 1992, *see* MCP No. 18; and the EPA followed suit in 1993, *see* MCP No. 21.[8] *See generally* https://tinyurl.com/yyftumy5.

The enactment history of the 1988 amendment to 28 U.S.C. § 2112 also confirms that publication in the Federal Register is the key trigger for challenging the "issuance of [an] order." Loren Smith, then the Chairman of the Administrative Conference of the United States, testified that having the time period for transmission run from Federal

_____

[8] The Securities and Exchange Commission transferred petitions for review before publication in the Federal Register in March of 2024. *See* MCP No. 180, https://tinyurl.com/yyftumy5 at page 181. That difference in approach arises from differences in statutory and regulatory text. Unlike the FTC Act's judicial review provision, which permits challenges after a rule is "promulgated," a person aggrieved by an SEC order may bring a petition for review "within sixty days after entry of such order." 15 U.S.C. § 77i. And SEC rules provide that "[t]he date of entry of a Commission order shall be the date the order is signed." 17 C.F.R. § 201.140.

Register publication was important to "give a more realistic opportunity to parties outside of Washington to learn of the agency's decision" and that "[g]iven the delay in the publication and circulation of the Federal Register, five days may not be enough." Selection of Courts of Appeals to Decide Multiple Appeals, Hearing on H.R. 3084 Before the Subcomm. On Administrative Law and Governmental Relations of the H. Comm. On the Judiciary, 98th Cong. 12, 15 (1983).

Finally, accepting petitioners' argument that a rule "issues" for purposes of § 2112 when the agency announces the proposed text being transmitted to OFR has the potential to adversely affect the rights of third parties. In light of the case law discussed above, interested parties who are contemplating a challenge to the Rule could reasonably conclude that the proper time to file a challenge would be after the final rule is published in the Federal Register. But under petitioners' interpretation, a party who files a petition for review of the Rule and serves it on the FTC one day after Federal Register publication would be shut out of the § 2112 lottery and the JPML would not be able to consider its choice of forum. By contrast, reading "issuance" to refer to

publication gives all parties who wish to challenge the rule a fair and equal chance to participate in the lottery.

### B. Petitioners Have Not Cited Any Persuasive Authority To Suggest That a Rule Is "Issued" When Its Proposed Text Is Released and Transmitted to OFR.

Petitioners do not cite any authority persuasively supporting their position that a rule "issues" for purposes of § 2112 when the agency releases the proposed text it is transmitting to OFR. Petitioners latch onto references in the Commission's proposed rule text to "Final Rule," "issued" and "[t]he Commission now promulgates a final Rule." Mot. 17-18. But the Commission must use the quoted language in the proposed text for it to appear in the Federal Register, and the document petitioners cite is expressly labeled "proposed text" and makes plain that there is no effective date until Federal Register publication.[9] Furthermore, as discussed above, caselaw makes clear that a rule is a legal nullity until it is published in the Federal Register, and historical agency practice has been to deem rules issued for purposes of § 2112 at the point of Federal Register publication.

------

[9] Federal Trade Commission, *Proposed text of Federal Register publication*, https://tinyurl.com/29eamzmn at 1.

The cases Petitioners cite do not support a contrary conclusion. *Saturn Airways, Inc. v. Civil Aeronautics Board,* 476 F.2d 907 (D.C. Cir. 1973), construed a version of § 2112 from before the 1988 amendments and did not address the meaning of "issuance." Rather, the court held that petitions for review filed after an agency announced its action in a press release were not premature where the press release communicated the substance of the agency action and the agency "had taken what it deemed official action." *Id.* at 909. The issue here is not whether the petitions for review are premature, but instead when the ten-day clock in § 2112 starts to run. *Saturn Airways* does not address that question.

*Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092, 1099 (5th Cir. 1976), did not concern § 2112 at all—either the old version or the amended one—or construe the term "issuance." Instead, this Court held there that lack of publication in the Federal Register was irrelevant to whether the agency action at issues was "final and conclusive" under the relevant statute because the action in question was already effective. *Id.* at 1099. Here, the Rule does not yet even have an effective date, and it is still subject to withdrawal and amendment. *See supra* 19.

*Humane Society of the United States v. United States Department of Agriculture*, 41 F.4th 564 (D.C. Cir. 2022) is inapposite for similar reasons. The dispute in that case was whether an agency could withdraw a rule without notice and comment after OFR made the rule available for public inspection, or whether publication in the Federal Register was "the point of no return." *Id.* at 568. No judge in that case thought that the rule had been promulgated when the agency released the proposed text that it was transmitting to OFR, and in fact the both the majority and the dissent seemed to agree that promulgation would not have occurred at that point.[10]

Petitioners next rely on *In re FERC*, MCP No. 175, 2024 WL 1596933 (Apr. 11, 2024), *see* Mot. 18-19, but that case concerned an agency order, which under the FERC statute "issued" when the agency denied a petition for rehearing. *In re FERC*, MCP No. 175, 2024 WL 1596933 at *3. Indeed, if anything, *In re FERC* actively cuts against Petitioners' argument that the FTC should be required to transmit the

---

[10] The statute Petitioners cite, 44 U.S.C. § 1501, is unavailing for the same reason. The statute defines "document" as, among other things, a "rule …issued, prescribed, or promulgated by a Federal agency." But it does not define when a rule is "issued" or "promulgated."

petitions for review to the JPML now. There, the agency had originally forwarded two petitions to the JPML, one from the District of Columbia Circuit and one from the First Circuit. The JPML initially conducted a lottery and consolidated the cases before the First Circuit, but upon reconsideration, it held that the First Circuit petition was not received by the agency within the ten-day period and vacated the consolidation order. *Id.* at *4.

*In re FERC* thus confirms that a party can raise an objection before the JPML if it believes a particular case should not be included in the lottery. Accordingly, if another petition for review is filed and served on the FTC within ten days after publication, petitioners will be able to argue before the JPML that the new petition should not be included in the lottery because it was not filed within ten days of "issuance" (as petitioners construe that term). By contrast, if the FTC were to transmit petitions to the JPML now, then other challengers would be effectively shut out of the lottery. Deferring notification thus preserves the JPML's ability to decide when a rule is deemed to issue if it is necessary to do so.

## III. MANDAMUS SHOULD ALSO BE DENIED BECAUSE PETITIONERS HAVE AN ALTERNATIVE REMEDY BEFORE THE JPML.

Mandamus should also be denied because Petitioners have an alternative remedy to the harms claimed in their petition, which alone is enough to deny the petition. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that mandamus was not appropriate because there was an adequate alternative remedy).

Petitioners primarily focus on whether they can seek a stay from a court before the Rule's effective date. But as already explained, sending the petitions to the JPML has no bearing on Petitioners' ability to do that. To the extent Petitioners' desire is to limit the lottery to only the four courts in which petitions have already been filed, Petitioners can take that argument to the JPML. As discussed above, Petitioners can object before the JPML to the inclusion of certain courts in the lottery, and the JPML will consider those arguments and, if necessary, adjust the lottery accordingly. *See, e.g., In re FERC*, MCP No. 175, 2024 WL 1596933 at *3. If Petitioners' concern is that other petitions not yet filed

could be included in the lottery, they do not need mandamus to address that concern.[11]

On the other hand, if the Commission were to send the petitions to the JPML now and the random lottery were conducted, any petition submitted in a different circuit within 10 days of the Federal Register notice will be forced to accept the results of the prematurely run lottery. Petitioners claim that any later filing petitioners can "challenge the lottery or its outcome … in court," Mot. 19 n.4, but they do not explain how that could be done—and they ignore that any such challenge would necessarily take place in a court not of the hypothetical challenger's choosing. As Petitioners acknowledge, such a challenge necessarily would occur after "future petitions for review" have been "consolidated in the transferee court." *Id*.

Petitioners next complain about the prospect of stay litigation in multiple circuits: specifically, that "[w]ithout swift consolidation, Petitioners will be forced to litigate a stay request while other potential requests are litigated in other circuits." Mot. 20. But § 2112(a)(4)

---

[11] The multicircuit lottery statute also expressly allows parties to move to transfer to a different court after the lottery is run and petitions are consolidated in a single circuit. *See* 28 U.S.C. § 2112(a)(5).

expressly provides that "[a]ny court of appeals in which proceedings …

have been instituted may … stay the effective date of the [challenged]

order," and then such stay can be "modified, revoked, or extended" by

the court selected through the random lottery. 28 U.S.C. § 2112(a)(4).

Even if Petitioners "need the certainty of a stay" of a rule that doesn't

yet exist, it is simply not true that "only a prompt judicial lottery can

provide" that opportunity. Mot. 20-21. The opportunity for stay

proceedings are thus certainly "available," rendering mandamus

unwarranted.[12]

## IV. PETITIONER'S REMAINING ARGUMENTS DO NOT DEMONSTRATE THAT MANDAMUS IS APPROPRIATE

Even if Petitioners had demonstrated the first two requirements

for mandamus, such relief would still be improper. *Cheney*, 542 U.S. at

381. Although Petitioners are correct that "the issues [here] have an

importance beyond the immediate case … and are likely to arise in the

future" Mot. 22 (internal quotation and citation omitted), they are

wrong that this factor counsels in favor of mandamus. Far from

---

[12] Petitioners have filed a stay motion with the Commission and if the Commission denies that request they may seek a stay in court. *See* Fed. R. App. P. 18.

representing an "arrogation of power," Mot. 22, the FTC's practice here is consistent with the practice of federal agencies spanning presidential administrations of both parties for over three decades, as explained above. *See supra* 20-22.

Further, as explained above, Petitioners are wrong that "[i]t would be impossible for the courts to review … agency decisions" about which petitions to submit to the JPML "in the ordinary course," Mot. 22. After the JPML randomly chooses the circuit in which the petitions will be heard, Petitioners can ask the JPML to limit the lottery to just the four courts in which they sued, or they can bring a motion to transfer to a different circuit and argue that the selected circuit never should have been part of the lottery. Petitioners' assertion that denying mandamus "would spawn duplicative cases, more litigation costs, and a greater risk of courts of appeals issuing conflicting rulings," Mot. 23, is impossible to square with the absence of any such consequences in the dozens of cases over the past 30-plus years in which agencies have followed the same course that the FTC is following here. Mandamus is therefore unnecessary to ensure a "consistency of outcomes," Mot. 23 (citation

omitted). Such consistency has long existed and the FTC's actions are in line with it.

Mandamus also is unwarranted because Petitioners have not shown any harm resulting from the present dispute over transmission to the JPML—let alone harm that mandamus would address. They do not substantiate their claim that "it will take companies months, if not years, of expensive work to ensure they can comply with the Rule's complex requirements," Mot. 23, nor do they explain how that putative harm stems from the Commission's decision to submit any petitions for review to the JPML 10 days after publication in the Federal Register. Indeed, nothing about the Commission's decision to await publication in the Federal Register affects Petitioners' ability to seek a stay. As already explained, Petitioners can seek a stay regardless of whether the petitions have been submitted to the JPML. *See* 28 U.S.C. § 2112(a)(4).

Finally, Petitioners' request for an administrative stay pending the lottery, Mot. 24-25, should be denied. Petitioners complain that absent an administrative stay pending the lottery, "Petitioners may be forced to move for a stay of the Rule's effective date outside the transferee court designated by the lottery process—the exact harm that

this petition for mandamus is meant to prevent." Mot. 25. As already explained, this is no concern at all—it is expressly allowed by statute. *See* 28 U.S.C. § 2112(a)(4). Petitioners' assertion thus cannot serve as the basis for either an administrative stay, or for the extraordinary relief of mandamus. Regardless, Petitioners cannot seek a stay—administrative or otherwise—from this Court until the Commission renders its decision on the pending motion to stay the Rule pending judicial review. *See* Fed. R. App. P. 18.

|  | Respectfully submitted, |
|---|---|
|  | ANISHA S. DASGUPTA<br>*General Counsel* |
| November 12, 2024 | MATTHEW M. HOFFMAN<br>BENJAMIN F. AIKEN<br>MATTHEW WEPRIN |
|  | /s/ Benjamin F. Aiken<br>*Attorney* |
|  | FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br>baiken@ftc.gov<br>(202) 326-2151 |

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing motion complies with the volume limitations of Fed. R. App. P. 21(d)(1) because it contains 6,008 words. I certify further that it complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 2010 in 14-point Century Schoolbook.

November 12, 2024

/s/ Benjamin F. Aiken
Benjamin F. Aiken
Attorney
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580